IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Venita Y. Billingslea,<br>    Plaintiff,<br><br>v.<br><br>Michael J. Astrue, Commissioner, Social<br>Security Administration,<br>    Defendant. | Case No 6:10-cv-01467-JMC-JDA<br><br>**REPORT AND RECOMMENDATION**<br>**OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion for summary judgment filed by Defendant and a motion for summary judgment filed by Plaintiff. [Docs. 42, 46]. This action alleges a sex discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); an age discrimination claim pursuant to the Age Discrimination in Employment Act, as amended ("ADEA"); and a marital status discrimination claim pursuant to the Civil Service Reform Act of 1978, as amended ("CSRA"). [Doc. 10.] Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Defendant filed a motion for summary judgment on August 22, 2011. [Doc. 42.] Plaintiff filed a response in opposition to Defendant's motion on September 6, 2011 [Doc. 47], and Defendant filed a reply on September 16, 2011 [Doc. 50]. Plaintiff filed a motion for summary judgment on September 2, 2011 [Doc. 46], and Defendant filed a response in opposition to Plaintiff's motion on September 19, 2011 [Doc. 51]. The motions are now ripe for review.

## BACKGROUND

Plaintiff, an employee of the Social Security Administration ("the Administration"), filed this action on June 7, 2010, alleging a sex discrimination claim, an age discrimination claim, and a marital status discrimination claim against Defendant Michael J. Astrue, Commissioner of the Administration ("Defendant"), for failure to select Plaintiff for a project manager position. [Doc. 1.] Plaintiff went to work part-time for the Administration on June 11, 1979, while she was still in college, and has been with the agency since then. [Doc. 42-7 at 10:22–11:11.] In August 1981, she began a full-time position as a claims representative. [*Id.* at 11:12–23.] Her GS level was GS-4. [*Id.* at 11:24–12:2.] Plaintiff was promoted several times: in 1991, she was promoted to operations supervisor [*id.* at 13:5–14:4]; over the next twelve years, she was upgraded to a GS-11 level and then a GS-12 level [*id.* at 21:13–18]; in 2003, she took a lateral transfer to area work incentives coordinator at a GS-12 level [*id.* at 21:3–9]. She continues to hold this position. [*Id.* at 21:6–7.] The area work incentives coordinator focuses on disability claimants returning to work under the Ticket to Work Program and does not "work claims" for social security benefits. [Doc. 42-12 at 20:9–22, 22:19-24; Doc. 42-13 at 6:14–17; Doc. 42-18 at 12:2–13; Doc. 42-14 at 20:8–14.] Although the position is on the area director's staff, based in Atlanta, Plaintiff is physically located in Greenville, South Carolina as an outstationed employee. [Doc. 42-8 at 47:24–48:1.]

In April 2009, Rodney Taylor ("Taylor") announced the then-project manager, Gloria Robinson ("Robinson"), was retiring from the Administration. [Doc. 42-7 at 46:20–47:14.] Plaintiff applied for the project manager position. [*Id.* at 48:15–18.] Plaintiff was 49 when

2

she applied for the position. [Doc. 42-1 at 3 ¶ 1; Doc. 42-2 at 2.] Taylor was the selecting official for the project manager position; Taylor testified that, after initial applications for a position have been rated, the individuals who are well qualified for the position are listed in alphabetical order on the Well Qualified List. [Doc. 42-12 at 2:4–8.] Plaintiff's name was on the Well Qualified List for the project manager position. [*Id.* at 2:9–11.] Additionally, Gregory Branch ("Branch"), who was 29 and was ultimately selected for the position, appeared on the Well Qualified List. [*Id.* at 10:18–23; Doc. 46-1 at 2.] When Taylor is selecting someone for a position, after he receives the Well Qualified List, he reads through the applicants' experience and makes notes of education, training, experience, and awards. [Doc. 42-12 at 44:23–25.] Then, he contacts supervisors to get more information about the applicants' skills and potential to succeed. [*Id.* at 44:25–Doc. 42-13 at 1:7.] He makes his decision based on a combination of reviewing the applicants' experience, his own personal knowledge of the applicants, and the recommendations from supervisors who know the applicants. [Doc. 42-13 at 1:8–11.] For the project manager position, Taylor placed significant weight on the information he received from the candidates' supervisors and Robinson because they had superior firsthand knowledge of the candidates; the feedback he received was the most important and decisive factor. [*Id.* at 3:18–21.]

In the selection process, Taylor was also aware of previous feedback from Ellen Hall, who supervised Plaintiff from 2004 through 2007. [Doc. 42-18 at 11:13–24.] Hall testified that during the time she supervised Plaintiff, Plaintiff was resistant to completing the technical work associated with the area work incentives coordinator position and did not work independently, requiring frequent contact with the Area Director's Office. [*Id.* at

3

12:14–14:16, 15:7–17:12.] Additionally, Plaintiff used leave frequently, in small increments without notice, such that Hall could not depend on her to be available when needed. [*Id.* at 17:13–18:2, 18:21–19:1.] Hall spoke openly with Taylor regarding these concerns. [*Id.* at 14:17–15:6, 18:3–20.]

Taylor also relied on the feedback he had previously received from Gloria Maupin, who supervised Plaintiff from early 2007 until Maupin retired in January 2009. [Doc. 42-14 at 11:25–12:2; Doc. 42-11 at 35:13–142.] Maupin found the tone of Plaintiff's emails to higher ranking managers to be offensive. [Doc. 42-14 at 35:2–5.] In her opinion, Plaintiff "came off almost . . . egocentric, self-centered; do it and do it now because I want it." [Doc. 42-15 at 17:2–4.] Managers complained to Maupin about the tone in which Plaintiff communicated to them. [*Id.* at 17:12–18:2.] Additionally, Maupin testified Plaintiff had difficulty communicating technical information in an accurate, easy to understand manner. [Doc. 42-16 at 6:10–14.] Maupin testified she personally reviewed every document Plaintiff drafted, even emails, before they went out: "I made changes many, many, many, many, many times, almost every time on every document and I would send it back and she would make the changes and send it out." [Doc. 42-14 at 33:15–34:6.] Plaintiff corroborated Maupin's testimony, recalling that, when Plaintiff needed to contact high ranking managers, Maupin required Plaintiff to follow certain protocols:

> Now there was a time when we had to come up with an understanding that I needed to go – because I am a GS-12 and I had to get the understanding – understand that, you know, sometimes all the manager[s] didn't really appreciate me going to them to tell them that, hey, can I talk to your employee about a problem? Charleston, I believe, was one of them, come to think of it, and that was just kind of to appease everybody I might want to run it by [Maupin] to see if it was okay.

4

[Doc. 42-8 at 49:12–22.] Additionally, Maupin testified she struggled to get Plaintiff to perform the technical work associated with the area work incentives coordinator position and had to remind her to do it. [Doc. 42-14 at 15:16–16:6.] There were occasions when Maupin ended up doing Plaintiff's work herself. [*Id.*] Further, there were leave issues. [*Id.* at 18:14.] Plaintiff took leave frequently, with little notice, causing Maupin to either do Plaintiff's work or ask someone else to do it. [*Id.* at 24:6–18.]

During the selection process, Taylor consulted with Anthony Sims ("Sims"), who was Plaintiff's supervisor for about three months and had previously worked in the Columbia, South Carolina field office with Branch. [Doc. 42-13 at 36:2–9.] Taylor also consulted with Darrell Sheffield ("Sheffield"), who was the Columbia District Manager and supervised Branch for about seven years. [Doc. 42-12 at 11:14–18.] Sheffield

> clearly said that [Branch] was the best candidate and was highly recommended over the other candidates from Columbia. . . . And he gave lots of reasons at that time, based on his knowledge of the disability process, how well he had done in supervising employees, and his demeanor. And he went over a lot of things because he knew what was involved with that job. And he also had some dealing with [Plaintiff], so he knows both candidates.

[Doc. 42-13 at 4:9–19.] Sheffield observed that Branch was extremely technically proficient, was a "go to" person for anything related to disability claims, and had become a resource for the entire office. [Doc. 42-22 at 15:3–16:12, 21:6–24:7.] He observed that Branch had strong communication skills both orally and in writing, the ability to negotiate, and excellent interpersonal skills. [*Id.*] Sheffield testified Branch had a "natural liaison" personality and was already serving as an outreach point of contact on Sheffield's behalf. [*Id.*]

5

Finally, Taylor sought input from Robinson, the departing project manager. Taylor testified Robinson's input was very important because she knew best what the job required, and she had worked closely with both Plaintiff and Branch. [Doc. 42-13 at 4:20–25.] Plaintiff "shadowed" Robinson for five months on rotation when Plaintiff participated in a development program during 2005 to 2006. [Doc. 42-20 at 15:2–6.] Robinson testified she observed Plaintiff was not able to resolve application-processing questions, even though Robinson had previously reviewed them with her. [*Id.* at 17:11–18:24.] Sometimes, Plaintiff responded to questions with incorrect information. [*Id.*] Robinson was familiar with Branch because they both work in the Columbia field office, where Robinson was outstationed. [*Id.*] When he came to Robinson with a question, Branch's knowledge level was evident in his ability to understand the information she gave him. [Doc. 42-21 at 5:10–15.] Taylor testified that Robinson

> . . . clearly said [Branch] was a much better candidate because of not only his technical knowledge of the disability program but his ability to bring people together and negotiate. And she said it would be a very, very bad decision for [Plaintiff] to take that job, because she's worked with her and she knew that [Branch] was a much better candidate based on her personal knowledge of the two individuals and what was required for the job.

[Doc. 42-13 at 35:14–22.]

Taylor further testified, "No one told me that [Plaintiff] would be a higher or a better candidate than [Branch]." [*Id.* at 35:25–36:1.] Taylor further testified,

> I mean, I personally liked [Plaintiff] a lot, and I never had any personal major issues with her. But when it comes down to selecting an individual for a particular job, you have to look at the skill sets that are needed, you have to look at the top candidates, and you have to make a decision based on who you feel has demonstrated the potential to do best in that job.

6

>     And those individuals who had firsthand knowledge all gave
>     their reasons why they thought [Branch] would do a better job.

[*Id.* at 40:7–16.]

## APPLICABLE LAW

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at

252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**DISCUSSION**

**Title VII Sex Discrimination Claim and ADEA Claim**

With respect to the sex and age discrimination claims, Defendant argues that although Plaintiff can establish a prima facie case of discrimination, Defendant has articulated a legitimate, nondiscriminatory reason for not selecting Plaintiff to be project manager, and Plaintiff cannot demonstrate this reason is a pretext for discrimination. [Doc. 42-1 at 17–30.] Defendant further argues the ADEA puts an even heavier burden on a plaintiff, requiring a plaintiff to prove by a preponderance of the evidence that age was the but-for cause of the employer's adverse employment action. [*Id.* at 18.] Plaintiff argues she has established a prima facie case of discrimination [Doc. 46-1 at 4–7; Doc. 47 at 4–5] and that Defendant's proffered reason for not selecting Plaintiff is a pretext for discrimination [Doc. 46 at 8–10; Doc. 47 at 5–10].[1] The Court agrees summary judgment should be granted in favor of Defendant on these claims.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29

---

[1] The Court notes Plaintiff's motion for summary judgment and response in opposition to Defendant's motion for summary judgment address only the ADEA claim. [Doc. 46-1 at 4–10; Doc. 47 at 4–10.] Accordingly, it appears Plaintiff has abandoned her Title VII sex discrimination claim. However, in an abundance of caution and because the same arguments could apply to a determination of whether the articulated reason is a pretext for both sex discrimination and age discrimination, the Court will address Plaintiff's sex discrimination claim and apply Plaintiff's arguments related to pretext for the age discrimination claim to the sex discrimination claim.

U.S.C. § 623(a)(1). As the Fourth Circuit Court of Appeals has explained in the wake of *Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003), a Title VII plaintiff may "avert summary judgment . . . through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277 (4th Cir. 2004). First, a plaintiff may survive a motion for summary judgment "by presenting direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor . . . motivated the employer's adverse employment decision." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may proceed under the *McDonnell Douglas* "pretext" framework.[2] *Id.* (quoting *Hill*, 354 F.3d at 285). Under this framework, an employee must first prove a prima facie case of discrimination.[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff succeeds, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.* By providing such an explanation, the employer rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the [employer]

---

[2] The ADEA does not provide that a plaintiff may establish discrimination by showing age was simply a motivating factor in an employment decision. The ordinary meaning of the ADEA's requirement that an employer took adverse action "because of" age is that age was the "reason" that the employer decided to act; accordingly, under the ADEA, a plaintiff must prove age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Svcs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 2351 (2009). Although the Supreme Court has left undecided whether the *McDonnell Douglas* framework applies in an ADEA case, *id.* at 2351 n.4, the Fourth Circuit has generally applied the *McDonnell Douglas* framework to ADEA cases, *see, e.g., Hill*, 354 F.3d 277(applying *McDonnell Douglas* framework to ADEA case).

Here, Plaintiff does not attempt to survive summary judgment using direct or circumstantial evidence of discrimination. Instead, she relies exclusively on the *McDonnell Douglas* burden-shifting scheme to argue she can establish a prima facie case of discrimination and that Defendant's articulated legitimate, nondiscriminatory reason for not promoting Plaintiff is a pretext for discrimination. [Doc. 46-1 at 4–10; Doc. 47 at 4–10.]

[3] To establish a prima facie case of discrimination in a failure to promote case, a plaintiff must allege facts showing (1) she is a member of a protected group; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected under circumstances that give rise to an inference of unlawful discrimination. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319 n.6 (4th Cir. 2005) (quoting *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005)).

to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the employer articulates a legitimate, nondiscriminatory reason, the burden shifts back to the employee to show that the articulated reason was actually a pretext for retaliation. *McDonnell Douglas*, 411 U.S. at 804; *see also Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

Here, Defendant concedes Plaintiff can establish a prima facie case of sex and age discrimination [Doc. 42-1 at 18],[4] but Defendant articulates and supports a legitimate,

---

[4] The Court is not convinced Plaintiff has established a prima facie case of discrimination because the Court is not convinced Plaintiff has established the fourth element—she was rejected under circumstances that give rise to an inference of unlawful discrimination. However, as one court within the Fourth Circuit has noted, "[t]he relevance of the *McDonnell Douglas* scheme outside of the trial context is limited." *Lerner v. Shinseki*, No. ELH-10-1109, 2011 WL 2414967, at *14 (D. Md. June 10, 2011). The Fourth Circuit has observed,

> Notwithstanding the intricacies of proof schemes, the core of every Title VII case remains the same, necessitating resolution of "the ultimate question of discrimination *vel non*." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). As the Supreme Court has explained, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, "[c]ourts must . . . resist the temptation to become so entwined in the intricacies of the [ *McDonnell Douglas* ] proof scheme that they forget that the scheme exists solely to facilitate determination of 'the ultimate question of discrimination *vel non*.' " *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991) (citation omitted).

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294–95 (4th Cir. 2010). Further, the Supreme Court has stated,

> Where the defendant has done everything that would be required of him if the plaintiff had properly made out a *prima facie* case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."

*Aikens*, 460 U.S. at 715 (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *see Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) ("The *Aikens* principle applies, moreover, to summary judgment as well as trial proceedings."). In light of this guidance from the Supreme Court and the Fourth Circuit, the Court agrees with the District of Maryland that where the employer has met its burden

11

nondiscriminatory reason for not selecting Plaintiff for the project manager position—based on the feedback Taylor received from multiple managers, he believed Branch was more qualified for the position [Doc. 42-1 at 19–24]. Taylor testified that, after initial applications for a position have been rated, the individuals who are well qualified for the position are listed in alphabetical order on the Well Qualified List. [Doc. 42-11 at 7:4–8.] Plaintiff's name was on the Well Qualified List. [*Id.* at 7:9–11.] When Taylor is selecting someone for a position, after he receives the Well Qualified List, he reads through the applicants' experience and makes notes of education, training, experience, and awards. [*Id.* at 24:15–25.] Then, he contacts supervisors to get more information about the applicants' skills and potential to succeed. [*Id.* at 24:25–25:7.] He makes his decision based on a combination of reviewing the applicants' experience, his own personal knowledge of the applicants, and the recommendations from supervisors who know the applicants. [*Id.* at 25:8–11.] With respect to the project manager position Plaintiff applied for, Taylor testified "all of the individuals that had personal knowledge clearly recommended [Branch] over [Plaintiff]." [*Id.* at 38:15–17.] Based on this explanation given by Taylor, the Court concludes Defendant has met its burden under *McDonnell Douglas* to produce evidence from which a jury could conclude Defendant had a legitimate, nondiscriminatory reason for not selecting Plaintiff. Accordingly, the Court will consider whether Plaintiff has met her burden of demonstrating that Defendant's proffered reason is merely a pretext for discrimination, which would indicate whether Plaintiff could meet her ultimate burden of

---

of articulating a legitimate, nondiscriminatory reason for its adverse action against the plaintiff, the Court may assume, without deciding, that the plaintiff has established a prima facie case of discrimination. *Lerner*, 2011 WL 2414967, at *14.

persuasion and demonstrate discrimination *vel non*.  See *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010) ("The final pretext inquiry 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination,' which at all times remains with the plaintiff." (alteration in *Merritt*) (quoting *Burdine*, 450 U.S. at 256)).

To prove an employer's articulated reason is a pretext for discrimination, a plaintiff "must prove '*both* that the reason was false, *and* that discrimination was the real reason' for the challenged conduct." *Jiminez v. Mary Wash. Coll.*, 57 F.3d 369, 378 (4th Cir. 1995) (emphasis in original) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  Upon review of the record, the Court determines Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Defendant's proffered reason for not selecting Plaintiff is merely a pretext for discrimination.

In her response in opposition to the motion for summary judgment, Plaintiff first appears to argue that by establishing a prima facie case, she has also established pretext and need not provide additional proof.  [Doc. 47 at 5–6.]  However, Plaintiff's reliance on *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000), for this proposition is misplaced.  Plaintiff omitted portions of the quotation from *Reeves* in her response in opposition.  The full quotation—"Moreover, although the presumption of discrimination 'drops out of the picture' once the defendant meets its burden of production, the trier of fact may still consider the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom . . . on the issue of whether the defendant's explanation is pretextual,'" *Id.* at 143 (citations omitted)—clarifies the Supreme Court was actually

13

addressing the allocation of proof under *McDonnell Douglas* and was not stating that establishing a prima facie case is enough to establish pretext.

Plaintiff next contends the supervisors' assessments and input to Taylor was inaccurate, specifically alleging (1) Defendant's arguments that Plaintiff lacks initiative in performing technical tasks and lacks interpersonal communication skills and must remain in constant contact with her area director's office are easily refuted [*id.* at 6–8]; (2) Plaintiff's positive performance evaluations and various awards raise questions of fact [*id.* at 9]; (3) Defendant's shifting reasons for not selecting Plaintiff raises issues of fact [*id.*]; and (4) the promotion or lateral hire of other women over age 40 is immaterial [*id.* at 9–10]. However, Plaintiff fails to argue Taylor's articulated reason for not selecting Plaintiff is a pretext. Stated differently, Plaintiff fails to argue Taylor did not believe Branch was more qualified. Instead, Plaintiff focuses her argument on whether the recommendations themselves were correct.

When determining whether an articulated reason is pretextual, "[i]t is the perception of the decision maker which is relevant." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 445 (4th Cir. 1998), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). In a case with facts similar to the case at hand, the Fourth Circuit has addressed the situation where a plaintiff disagrees with the facts underlying a decision maker's assessment of the employee. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274 (4th Cir. 2000). In *Hawkins*, the employer argued it terminated the plaintiff because she performed poorly in her special projects capacity and failed to improve even after receiving negative feedback. *Id.* at 279. The plaintiff claimed the employer's criticisms were

inaccurate and insisted she performed her job well. *Id.* The court held the plaintiff could not show the employer's stated reasons for terminating her were not the real reasons for her discharge, noting "'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for plaintiff's termination.'" *Id.* (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (internal quotation marks omitted in *Hawkins*)); *see id.* at 280 ("But instead of producing evidence that shows [the supervisor's] assessment of her performance was dishonest or not the real reason for her termination—as the law requires—[the plaintiff] disputes the merits of [the] evaluations."). Here, although Plaintiff spends much of her response in opposition attempting to create issues of fact regarding whether the information the supervisors provided Taylor was correct and/or fair, whether that information was correct and/or fair is immaterial to the question of whether Taylor's belief Branch was more qualified than Plaintiff was the real reason for his not selecting Plaintiff. Plaintiff has failed to even argue Taylor did not believe Branch was more qualified when he selected Branch, much less produce evidence Taylor did not believe Branch was more qualified. Additionally, Plaintiff has failed to direct the Court to any other evidence in the record that would indicate the Defendant's proffered reason for not selecting Plaintiff is merely a pretext for discrimination. Accordingly, summary judgment should be granted on Plaintiff's Title VII sex discrimination and ADEA claims.

**CSRA Claim**

Defendant argues Plaintiff's CSRA marital status discrimination claim should be dismissed because the Court lacks subject matter jurisdiction over this claim. [Doc. 42-1 at 30–31.] The Court agrees.

Initially, the Court notes Plaintiff failed to address the CSRA claim in her response in opposition to Defendant's motion for summary judgment and, accordingly, has abandoned this claim. *See Jones v. Family Health Ctr., Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting claim not addressed in opposition memorandum had been abandoned); *Cousar v. Richland Cnty. Sheriff's Dep't*, 3:08-392-CMC, 2009 WL 982414, at *6 (D.S.C. Apr. 10, 2009) (applying same principle to abandonment of claim against particular defendant). In any event, "[t]he CSRA is designed so that employees who are subjected to more severe or 'adverse' actions are entitled to formal proceedings before the agency, an appeal to the Merit Systems Protection Board (MSPB), and judicial review in the Court of Appeals for the Federal Circuit." *Pinar v. Dole*, 747 F.2d 899, 905 (4th Cir. 1984) (citations omitted). Accordingly, this Court lacks subject matter jurisdiction to decide Plaintiff's CSRA claim.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment [Doc. 42] be GRANTED and Plaintiff's motion for summary judgment [Doc. 46] be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

February 27, 2012
Greenville, South Carolina